IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ZONDRA LAVONNE STAGGS,

    Plaintiff,

    v.

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Civ. No. 6:15-cv-01060-MC

OPINION AND ORDER

MCSHANE, Judge:

    Plaintiff Zondra Lavonne Staggs brings this action under 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security denying plaintiff's claim for supplemental security income ("SSI"). The Commissioner's decision is affirmed and the case is dismissed.

1 – OPINION AND ORDER

## PROCEDURAL BACKGROUND

On December 14, 2011, plaintiff filed an application for SSI alleging disability as of January 1, 1988. Tr. 186-90. Her application was denied initially and on reconsideration. Tr. 104-26. She requested a hearing, and after the hearing the administrative law judge ("ALJ") found plaintiff not disabled. Tr. 56-101, 142. Plaintiff filed an appeal on April 9, 2015, and her request was denied, making the ALJ's decision final. Tr. 1-7. Plaintiff appealed to this Court and argues the ALJ erred by: 1) failing to provide substantial evidence to show plaintiff's depression and attention deficit disorder ("ADHD") were not severe impairments at step two; 2) failing to provide a sufficient reason to reject the medical opinion of Dr. Alison Prescott; 3) failing to assess plaintiff under Listing 12.05C; and 4) erring at step five by finding plaintiff could perform other jobs in the national economy. Pl.'s Br. 4-20. Because the Commissioner's decision was based on proper legal standards and was supported by substantial evidence, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the

evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. § 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 416.920. At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 8, 2011, the application date. Tr. 20. At step two, the ALJ found that Plaintiff suffers from the severe impairment of borderline intellectual functioning ("BIF"). Tr. 20-21. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R part 404, Subpart P, Appendix 1. Tr. 21-23.

In assessing Plaintiff's RFC, the ALJ concluded that Plaintiff could perform a full range of work at all exertional levels, with the following nonexertional limitations: "[Plaintiff] can

3 – OPINION AND ORDER

perform unskilled, repetitive, routine work; can have occasional contact with the public, supervisors, and co-workers; will be off-task at work 8% of the time, but is still able to meet minimum requirements of the job." Tr. 23-26. At step four, the ALJ determined Plaintiff was unable to perform any of her past relevant work. Tr. 26. At step five, the ALJ determined Plaintiff was capable of performing the jobs of janitor and laundry worker. Tr. 26-27. Therefore, the ALJ concluded Plaintiff was not disabled. Tr. 27.

I. **The ALJ Provided Substantial Evidence to Show Plaintiff's Depression and ADHD Were Not Severe Impairments at Step Two**

Plaintiff argues the ALJ failed to provide substantial evidence to show that her depression and ADHD were not severe impairments at step two. Pl.'s Br. 9-12.

At step two, the ALJ considers whether a claimant has a severe medically determinable physical or mental impairment, or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). The step-two inquiry is a de minimus screening device to dispose of groundless claims. *Bowen v. Yuckert,* 482 U.S. 137, 153-54 (1987) (step two inquiry intended to identity claimants whose medical impairments are so slight that it is unlikely they would be found disabled). A claimant's impairment or combination of impairments is not severe if it does not significantly limit his or her physical or mental ability to do basic work activities. 20 C.F.R. §§ 416.920(c), 416.921. Basic work activities are

> the abilities and aptitudes necessary to do most jobs. Examples of these include—
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

4 – OPINION AND ORDER

20 C.F.R. § 416.921(b). An impairment is not severe if it is merely "a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (citing SSR 96–3(p) (1996)).

Here, the ALJ found plaintiff's depression and ADHD at step two were "non-severe impairments," noting that the record did not support a finding they were severe. Tr. 20, 25. The ALJ gave "significant weight" to Dr. Michael J. Dennis and Dr. Bill Hennings' findings that plaintiff is not mentally disabled, finding their reports were "consistent with the longitudinal record and [plaintiff's] daily activities." Tr. 25, 104-26. The ALJ also noted that plaintiff worked as a cashier for many years at Dari Mart despite her depression and ADHD. Tr. 24. Additionally, the ALJ found plaintiff sought no medical treatment for her allegedly debilitating mental impairments and according to Dr. Alison Prescott, "show[ed] a fair range" of activities of daily living including running errands independently, fixing simple foods, and having a driver's license. Tr. 24-25, 104-26, 262, 272.

Indeed, an independent review of the record shows plaintiff worked at Dari Mart for three years despite her alleged severe mental impairments of depression and ADHD, and was ultimately terminated for reasons unrelated to her mental impairments.[1] Tr. 66-67, 193-95. Plaintiff also reported her ability to travel using public transportation, walking or biking, could cook simple meals, and could shop independently, although she preferred going with her mother. Tr. 96, 214, 262, 272. Additionally, both Dr. Dennis and Dr. Hennings opined that plaintiff was not significantly limited in her ability to understand and remember very short and simple

---

[1] Despite plaintiff's statement that she believed she was terminated because she was "slow," she testified and told Dr. Prescott that she was terminated from this position after having an angry outburst when she was accused of stealing money. Tr. 66-67, 205, 258, 268.

5 – OPINION AND ORDER

instructions. Tr. 111, 123.Further, the record shows plaintiff sought no additional medical treatment for her alleged mental impairments, even testifying that she only recently began seeking treatment for her depression and ADHD because lawyers told her that "the Judge needs this." Tr. 73, see also Tr. 51. (A February 19, 2014 medical record from the Center for Family Development, where medical assistant Nicole Miller noted "[plaintiff] is seeking counseling to help her case for disability, she was recently denied.")

In sum, the ALJ provided substantial evidence to show that plaintiff's ADHD and depression were not severe impairments at step two, and therefore I find no error. Additionally, any alleged error is harmless because the ALJ found plaintiff's BIF was severe at step two and continued with the sequential evaluation. Tr. 20-27, *see Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (an ALJ's mistake is harmless where it is nonprejudicial to the claimant).

## II.    The ALJ Provided a Sufficient Reason to Reject the Medical Opinion of Dr. Alison Prescott

Next, plaintiff argues the ALJ failed to give a sufficient reason to reject the medical opinion of examining physician, Dr. Alison Prescott. Pl.'s Br. 4-9.

An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.*

Here, the ALJ gave "some weight" to her opinion that plaintiff has BIF and "lesser weight" to Dr. Prescott's opinion that plaintiff's depression and ADHD "may be severe

impairments," finding it was "not supported by the record." Tr. 25. In making this finding the ALJ noted that Dr. Prescott found that plaintiff "shows a fair range" of activities of daily living, including running errands independently, having a driver's license, and fixing simple foods. Tr. 25.

Overall, I find the ALJ did not reject Dr. Prescott's opinion in its entirety, but only gave lesser weight to her opinion that plaintiff's depression and ADHD were severe impairments. Tr. 25. I find no error in the ALJ's finding. As discussed above, the record shows plaintiff has symptoms of depression and ADHD, yet she was able to maintain her ability to work, run errands independently, and care for herself. *See, e.g.*, Tr. 33-55, 66-67, 86-89, 211-18, 258-62, 272. Indeed, plaintiff worked at Dari Mart for three years and was ultimately terminated for reasons unrelated to her mental impairments. Tr. Tr. 66-67, 193-95. Additionally, in 2012 plaintiff reported to Dr. Prescott that she could take the bus independently, run errands, and can prepare simple food, and wrote in a functional report that she could travel alone by walking, biking, or taking public transportation, visited her boyfriend daily, and shopped twice a month. Tr. 212-14, 259, 262. Finally, Dr. Prescott's reports concerning plaintiff's depression and ADHD were based on plaintiff's subjective reports, which the ALJ found not entirely credible, and neither party challenged this determination.

In sum, the ALJ reasonably provided a clear and convincing reason to discredit the portion of Dr. Prescott's medical opinion that plaintiff's depression and ADHD were severe impairments. Therefore, I find no error.

### III.    The ALJ Did Not Err by Failing To Assess Plaintiff Under Listing 12.05C

Next, plaintiff argues the ALJ erred by failing to evaluate and find her disabled under Listing 12.05 Intellectual Disability at step three of his analysis. Pl.'s Br. 12-17. Specifically,

plaintiff argues that the ALJ's finding that she suffered from the severe impairment of BIF required him to evaluate plaintiff under listing 12.05. Pl.'s Br. 12-13.

Step three requires the ALJ to consider the severity of the claimant's impairment, by comparing the impairment to those listed in Appendix I of the Regulations, ("the Listings"). 20 C.F.R. Part 404, Subpt. P, App. I. To meet a Listing, the claimant's impairment must satisfy all of the components of the Listing. 20 C.F.R. § 416.925(d). The plaintiff has the burden of proving that he has an impairment that meets or equals a Listing. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). If the claimant's impairment meets or equals a listed impairment, he will be found disabled at step three.

Here, the ALJ evaluated plaintiff's mental impairments and found "claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.02, 12.03, 12.04, 12.06, and 12.09," relating to Organic Mental Disorders, Schizophrenic, Paranoid and Other Psychotic Disorders, Affective Disorders, Anxiety Related Disorders, and Substance Addiction Disorders, respectively. Tr. 21-23. In making this finding, the ALJ evaluated the "paragraph B" and "paragraph C" criteria and found neither the "paragraph B" or "paragraph C" criteria were satisfied. *Id.* The ALJ did not discuss Listing 12.05C in his step three findings. Therefore, the issue is whether the record supports remand for consideration of disability under Listing 12.05C.

The structure of Listing 12.05 for intellectual disability is different from the other mental disorders listings, and therefore requires a different analysis. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00(A). "Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability," and "four sets of criteria (paragraphs A through D)." *Id.* If an impairment "satisfies the diagnostic description in the introductory paragraph and any one of the

8 – OPINION AND ORDER

four sets of criteria," the impairment meets the listing. *Id.* In order to meet Listing 12.05C plaintiff must show, "(1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid IQ score of 60 to 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation." *Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C)).

1. **Valid IQ Score**

Listing 12.05C requires plaintiff to establish that she has "a valid verbal, performance, or full scale IQ of 60 through 70." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.05(C). "Where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00(D)(6)(c).

The ALJ noted only plaintiff's IQ score of 74 which was obtained by Dr. Prescott in March 2012, but did not acknowledge plaintiff's verbal comprehension score of 70. Tr. 261. The Commissioner concedes that the ALJ failed to consider plaintiff's verbal comprehension score of 70, but argues it is harmless because plaintiff failed to satisfy the diagnostic definition in the introductory paragraph of Listing 12.05. Def.'s Br. 12-13. An ALJ's error is harmless where it is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

Here, the ALJ failed to reference Listing 12.05C, and therefore it is unclear whether his analysis of Dr. Prescott's findings purposefully omitted discussion of plaintiff's verbal comprehension score. *See Thresher v. Astrue*, 283 F. App'x. 473, 475 (9th Cir. 2008) (an ALJ may reject a claimant's IQ score if it is not valid). This ambiguity arguably would be grounds for

9 – OPINION AND ORDER

remand as plaintiff's 2012 IQ score met the first prong of 12.05C. *See Orosco v. Colvin*, 2016 WL 1584151, at *5 (D. Or. Apr. 18, 2016); *Gomez v. Astrue*, 695 F. Supp. 2d 1049, 1056 (C.D. Cal. 2010) (where "silent disregard of the verbal IQ score" was an error and grounds for remand).

### 2. Onset Before Age 22 (The Diagnostic Definition)

The introductory paragraph of Listing 12.05 requires plaintiff to show she has "significantly subaverage general intellectual functioning with deficits in adaptive functioning manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.05. Adaptive functioning has been described as a "person's effectiveness in areas such as social skills, communication, and daily living skills, and how well the person meets the standards of personal independence and social responsibility expected of his or her age by his or her cultural group." *Heller v. Doe*, 509 U.S. 312, 328 (1993) (citing Manual of Mental Disorders 28-29). "A claimant may use circumstantial evidence to demonstrate adaptive functioning deficits that existed prior to age 22, such as 'attendance in special education classes, dropping out of high school prior to graduation, difficulties in reading, writing or math, and low skilled work history.'" *Glenn v. Colvin*, 2013 WL 3046871, at *3 (D. Or. June 11, 2013) (citing *Pedro v. Astrue,* 849 F. Supp. 2d 1006, 1011 (D. Or. 2011)); *see also Campbell v. Astrue*, 2011 WL 444783, at *17 (E.D. Cal. Feb. 8, 2011).

Plaintiff argues there is evidence in the record to satisfy the introductory paragraph of Listing 12.05C, citing Dr. Prescott's reports that she was enrolled in special education classes, had difficulties with reading and math, and that she was found learning disabled by social security as a child. Pl.'s Br. 14, Tr. 257-62, 267-72. I find the evidence is insufficient for plaintiff

to satisfy the introductory paragraph of Listing 12.05C. Granted, plaintiff cites evidence that she was enrolled in special education classes and was found learning disabled as a child, but the information in Dr. Prescott's reports were based entirely on plaintiff's subjective reports. The ALJ found plaintiff not entirely credible and neither party challenged this determination. Plaintiff provides no additional evidence, other than her own testimony, that she was enrolled in special education classes. Further, an independent review of the record shows plaintiff reported in her application for SSI that she was not disabled prior to age twenty-two and testified to graduating with a regular diploma. Tr. 82, 186, 257.

Additionally, plaintiff's work history contradicts her claims that she had adaptive functioning deficits prior to age 22. Plaintiff testified to losing her disability funding before the age of eighteen after becoming employed. Tr. 90. Plaintiff also testified to working as a janitor at a mall, at various fast food restaurants, and at a gas station mini-mart and lost these jobs for reasons unrelated to her mental impairments. Tr. 66-67, 86-89. Although plaintiff testified that she was "slow" at her jobs and constantly made mistakes, she testified that she either left jobs or was fired because of accusations of stealing money, having angry outbursts, and being bisexual, not her mental limitations. Tr. 85-89. Therefore, I find plaintiff's work history is insufficient to show plaintiff had adaptive functioning deficits prior to age 22.

Finally, plaintiff cites no medical evidence of record to show she had any mental health treatment related to her alleged mental health disability. Although plaintiff testified to hearing music in her head for the last fifteen years and assuming personalities, the ALJ reasonably found plaintiff's allegations were "not supported by the preponderant evidence" given there was "no indication that despite these allegations the claimant has sought psychiatric medical care of any kind for her alleged impairments, and/or taken steps to improve her mental health." Tr. 25.

Indeed, a February 2014 medical report noted that plaintiff was "seeking counseling to help her case for disability," and plaintiff testified that she had not mentioned the voices to Dr. Prescott until her second meeting with her because she "didn't really think about it." Tr. 81. For the above reasons, I find insufficient evidence to satisfy the introductory paragraph of Listing 12.05C. Therefore, the ALJ did not err in failing to evaluate plaintiff under Listing 12.05C.

IV. **The ALJ's Step Five Findings are Supported by Substantial Evidence in the Record**

Finally, plaintiff argues the ALJ erred at step five by finding she could work other jobs in the national economy. Pl.'s Br. 17-20. Essentially, plaintiff argues: (1) the ALJ failed to explain the inconsistency between the VE's testimony and the Dictionary of Occupational Titles ("DOT"), (2) the ALJ failed to incorporate plaintiff's functional limitations in her RFC, and (3) the VE's hypothetical was not supported by substantial evidence in the record. *Id.*

At step five, the burden of proof shifts to the Commissioner to demonstrate that the claimant can engage in some type of substantial gainful activity that exists in "significant numbers" in the national economy. *Yuckert,* 482 U.S. at 141-42. The step five analysis requires assessment of the medical evidence, the claimant's daily activities, prior work record, functional restrictions and limitations, medication and other treatment for relief of symptoms, and evidence from physicians and third parties. 20 C.F.R. § 416.929. Typically, the ALJ propounds a hypothetical question to the VE that is based on medical assumptions supported by the record and reflects all of the claimant's limitations. *Osenbrock v. Apfel,* 240 F.3d 1157, 1163 (9th Cir. 2001). If the claimant fails to present evidence that she suffers from certain limitations, the ALJ need not include those alleged impairments in the hypothetical question to the VE. *Id.*

First, plaintiff argues the ALJ did not explain the conflict between the DOT and the jobs identified by the VE. Pl.'s Br. 17-18. Specifically, that the two jobs identified by the VE, of

12 – OPINION AND ORDER

laundry worker and janitor, require a math level of one, which plaintiff argues she does not possess based on the reports of Dr. Prescott, who found plaintiff could not "compute simple math operations." Pl.'s Br. 17-18. However, the Commissioner argues there was no conflict between the DOT and the VE's testimony. Def.'s Br. 16-18.

When a VE provides information about the requirements of an occupation, the ALJ has an affirmative duty to determine whether the information conflicts with the DOT and to obtain an explanation for the apparent conflict. *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007). The ALJ must resolve the conflict, and make findings about how the conflict was resolved, before relying on the testimony to find that a claimant is not disabled. SSR 00-4p, 2000 WL 1898704 (S.S.A.). The ALJ may rely on testimony from the VE that contradicts the DOT, but only if the record contains persuasive evidence to support the deviation. *Johnson v. Shalala*, 60 F.3d 1428, 1436 (9th Cir. 1995). However, if is no conflict, failing to inquire about conflicts is harmless. *Massachi*, 486 F.3d at 1154 n.19 (9th Cir. 2007).

Here, there is no conflict between the DOT and the VE's testimony. The jobs identified by the VE of laundry worker and janitor have a math level one requirement. Tr. 27. Under the DOT math level one requires a claimant to possess the following skills:

> Add and subtract two-digit numbers. Multiply and divide 10's and 100's by 2,3,4,5. Perform the four basic arithmetic operations with coins as part of a dollar. Perform operations with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound."

DOT App. C., §III.

The hypothetical propounded to the VE did not contain any limitations regarding plaintiff's math skills. Because there was no conflict between the DOT and the VE's testimony there was no need for the ALJ to inquire with the VE about whether his testimony was consistent with the DOT. Therefore, there is no error.

13 – OPINION AND ORDER

Before addressing the next part of plaintiff's step five argument I will address the argument plaintiff essentially attempts to make with respect to the VE"s testimony. Here, plaintiff essentially argues that her RFC did not include all of her functional limitations, specifically, her limitations related to her math skills. Pl.'s Br. 17-18.

The RFC is the maximum a claimant can do despite her limitations. *See* 20 C.F.R. § 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p. The ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock*, 240 F.3d at 1163-65 (9th Cir. 2001).

When determining plaintiff's RFC the ALJ noted that plaintiff reported she could pay bills, count change, handle a savings account, and uses a checkbook/money orders. Tr. 22, 215. The ALJ also found plaintiff was able to slowly add a two-digit addition problem according to Dr. Prescott. Tr. 24, 260. Despite the ALJ's findings, an independent review of the record shows conflicting evidence with respect to plaintiff's math abilities. Plaintiff testified that she had a checking account but never managed it, stating that it was "always ... overdrawn," yet reported in a 2012 function report that she "never had problems with [numbers]" and could pay bills, count change, handle a savings account, and use a checkbook. Tr. 215. Additionally Dr. Prescott reported plaintiff "could not compute simple math operations" yet found she could "slowly add a 2 digit addition problem." Tr. 260.

14 – OPINION AND ORDER

Although there is conflicting evidence in the record with respect to plaintiff's ability to manage her finances and work with numbers, the ALJ reasonably resolved those conflicts when assessing plaintiff's RFC. Tr. 23-26. Specifically, the ALJ determined plaintiff not entirely credible, which neither party challenged. The ALJ also reasonably discredited Dr. Prescott, whose reports were largely based on plaintiff's subjective testimony. *See Batson*, 359 F.3d at 1198 (9th Cir. 2004) (if more than one rational interpretation of the evidence exists the court must defer to the ALJ's findings). Accordingly, I find no error in the ALJ's RFC assessment, and therefore no error in the ALJ's hypothetical propounded to the VE.

Finally, plaintiff argues the ALJ's hypothetical proposed to the VE was not based on substantial evidence. Pl.'s Br. 19-20. Plaintiff argues that the RFC limitation of being off-task at work eight percent of the time is equivalent to taking an extra five-minute break per hour, which the VE testified would not be tolerated by employers. *Id.*, Tr. 98. Therefore, plaintiff argues the ALJ's step five finding that she could perform work that existed in the national economy is not supported by substantial evidence. Pl.'s Br. 20.

I disagree. When evaluating plaintiff's RFC the ALJ determined she "will be off-task at work 8% of the time, but is still able to meet minimum production requirements of the job." Tr. 23. The ALJ posed this limitation, along with plaintiff's remaining functional limitations in her RFC, to the VE who testified that jobs existed in the national economy for someone with those functional limitations. Tr. 97-98. Only after plaintiff's counsel posed a hypothetical equating being off-task at work eight percent of the time to an additional five-minute break per hour did the VE testify, "I think that alone would have her get fired from the job, regardless of her production." Tr. 98. Plaintiff cites no evidence, nor is there is anything in the record to indicate being off-task eight percent of the time at work is equal to an extra five-minute break per hour.

15 – OPINION AND ORDER

*See Martinez v. Heckler*, 807 F.2d 771, 773 (an ALJ need not accept hypothetical questions propounded by plaintiff's counsel that are more restrictive than those posed by the ALJ). Since plaintiff's counsel posed a hypothetical with restrictions beyond those cited by the ALJ, the ALJ was not required to accept that hypothetical and its conclusions. Therefore, I find no error.

## CONCLUSION

For the reasons above, the Commissioner's decision is affirmed and the case is dismissed.

IT IS SO ORDERED.


DATED this  14  day of September, 2016.


                                                    Michael McShane
                                           United States District Judge